**L. R. FRENCH, Jr., H. L. Brown, Jr. and W. M. Fuller, Appellants,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., a corporation, Appellee.**

**No. 6001.**

Court of Civil Appeals of Texas.

El Paso.

March 19, 1969.

Rehearing Denied April 16, 1969.

Cantey, Hanger, Gooch, Cravens & Scarborough, Emory Cantey, Fort Worth, Turpin, Smith, Dyer, Hardie & Harman, Joseph Connally, Odessa, Bobby L. Sanders, Max Osborn, Midland, for appellants.

Stubbeman, McRae, Sealy & Laughlin, James L. Pardue, Milton Bankston, Midland, Eldon E. Scott, Dallas, for appellee.

## OPINION

PRESLAR, Justice.

This is a suit upon an operating agreement brought by Joseph E. Seagram & Sons, Inc., appellee, against L. R. French, Jr., H. L. Brown, Jr., and W. M. Fuller, appellants, for part of the cost incurred in drilling an oil well upon the premises covered by the operating agreement. By agreement of the parties, the court dismissed the jury and thereafter rendered judgment for the appellee in amounts which include attorneys' fees. We conclude that the judgment should be affirmed except that portion which allowed recovery of attorneys' fees.

Under the terms of the operating agreement, Texas Pacific Oil Company, a division of Joseph E. Seagram & Sons, Inc., is the operator of an oil and gas lease located in Upton County, Texas, and the appellants are non-operator interest owners. The agreement, dated May 3, 1965, was entered into by all of the owners of the leasehold estate and, as the name indicates, provides for the operation of the jointly owned property by the naming of Texas Pacific Oil Company as the operator in control of the operations of the area within the provisions of the agreement. Then, in considerable detail, the rights, obligations and duties of all parties are spelled out, including a provision that

the operator shall pay and discharge all the costs and expenses incurred and shall charge each of the parties with their respective proportionate shares of such cost and expenses, such proportion to be based on their proportionate ownership of the leasehold estate. This suit is one by the operator against the named appellants for their proportionate part of the cost of drilling and equipping a well known as the Egolf No. 6. At the trial the issue was narrowed as to whether or not appellee gave appellants the notice required under the operating agreement and, in the event appellee did so, if it is entitled to recover its attorneys' fees in addition to the costs involved.

Section 11 of the agreement provides: "Without the consent of all parties: (a) no well shall be drilled on the unit area except any well expressly provided for in this agreement and except any well drilled pursuant to the provisions of Section 12 of this agreement." Paragraph 12 of the agreement provides, in part: "If all the parties cannot mutually agree upon the drilling of any well on a unit area * * * any party or parties wishing to drill, rework, deepen, or plug back such a well, may give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation, and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days * * * after receipt of the notice, in which to notify the parties wishing to do the work whether they elect to participate in the cost of the proposed operation." The parties are in agreement that the contract is not ambiguous, and extrinsic evidence is not necessary to construe it.

On June 1, 1965, appellee forwarded to appellant an instrument called an AFE, Authority For Expenditure of funds, which covered the proposed cost of drilling the Anna M. Egolf No. 6 well by all parties to the operating agreement. Each appellant signed and returned the AFE as requested by a letter enclosed with it. These AFE forms met the requirements of the above Paragraph 12 as to written notice of the proposed operation, the work to be performed, the location, proposed depth, objective formation, and the estimated cost of the operation. In its Conclusions of Law the court found that the Egolf No. 6 was drilled by Texas Pacific pursuant to and in accord with the terms and provisions of the operating agreement, and that all notice required to be given by Texas Pacific to the appellants under such agreement for the drilling of said well was timely and properly given. The court further found that the appellants agreed in writing to the drilling, completing and equipping of such well. Appellants argue that such notice as they received was not sufficient to meet the requirements of the agreement, and under such circumstances the election which they made in returning the AFE's was not binding upon them. These AFE forms showed on their face that all parties owning an interest in the unit were participating in the drilling of this well. In fact, two owners were not participating. Appellants urge that their execution of the AFE forms prior to the time that any of them knew that all parties were not participating in the operation did not bind them. They urge that Section 12 provides not only for notice to the parties, but for an election by the appellants as to whether they wish to participate in an operation by fewer than all the parties to the operating agreement. This is another way of saying that the notice must show that all are not participating, so that the party may know what he is agreeing to—in other words, the sufficiency of the notice. That is really what is involved here because, as noted, the notice of June 1, 1965 was sufficient, except it did not show that all parties were not participating. Appellants' view would seem to require a preliminary step of all failing to agree prior to notice. The phrase, "if all parties cannot mutually agree" must be considered

with the remainder or entire provisions of the contract. Steeger v. Beard Drilling, Inc., 371 S.W.2d 684 (Tex.1963). The contract is silent as to any notice of a failure to agree, and we cannot write into it some provision for overt failure to agree as a prerequisite for notice. Rather, the contract provides that except as to wells agreed upon, the procedure of Section 12 would be followed. The notice provided for in Section 12 is the only notice required. Section 11 provides the exceptions under which a well may be drilled without the consent of all parties, stating that no well shall be drilled *except* any well expressly provided for in this agreement and *except* any well drilled pursuant to the provisions of Section 12. The agreement provides for the drilling of a test well, the Egolf No. 5, which was done; that would be one expressly agreed upon, and there being no other well expressly agreed upon, any other well drilled would have to be under Section 12 and would require such notice as was here given on June 1, 1965 by appellee. We conclude that the trial court was correct in holding that the appellee gave the appellants the notice required under the operating agreement.

We sustain appellants' point that the trial court erred in allowing appellee attorneys' fees in the sum of $3,000.00.

Appellee contends that theirs is a suit on sworn account for services rendered and materials furnished under a written contract, the operating agreement. That contract provides for the operator to pay all costs incurred and then bill the non-operators for their proportionate share. Appellee can provide the services and materials itself, or it can procure them from other sources; in either event it can charge them to the unit account and bill the non-operators for their share. All of these matters are covered in detail in the contract, but no provision is made in the agreement for attorneys' fees. There being no provision in the contract for allowance of attorneys' fees, we do not think

that this was a proper suit for allowance of same. The debt arose by reason of the contract, and the contract was relied on solely for recovery. Calling it a suit on sworn account does not alter the true basis of the recovery sought and allowed. It does not bring it within the provisions of Article 2226, Vernon's Annotated Civil Statutes. Roby Industries, Inc. v. Maxwell Electronics Corp., 409 S.W.2d 559 (ref. n. r. e.); Ezon v. Faulkner Construction Company, 422 S.W.2d 568 (n. w. h.). Appellee insists, and the court so found, that the recovery for attorneys' fees was allowed only for such items as appellee itself furnished. Thus appellee seeks to escape the holding of our Supreme Court in Trinity Universal Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571, which holding is that one cannot recover in an action for reimbursement of funds advanced, and not for labor done and materials furnished. Their pleadings were for a recovery of all items, both those furnished by the appellee and those for which they reimbursed others, with an allegation that one-third of such amount would be a proper attorneys' fee. Thus, they do not plead for recovery of attorneys' fees for such items as were furnished by appellee alone. However, we do not base our holding on the variance between the judgment and the pleadings, but simply hold that having sought recovery, and recovery having been allowed purely under the terms of a special written contract, and such contract not providing for attorneys' fees, the same are not recoverable.

We affirm that part of the judgment below which awarded appellee recovery against each of the appellants for its expenditures under the terms of the contract. We reverse that part of the judgment below which awarded attorneys' fees to appellee and here render judgment denying all attorneys' fees. Three-fourths of the cost of appeal are adjudged against appellants, and one-fourth of the cost of the appeal is adjudged against appellee.